UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BONNIE RUBENSTEIN, ET AL., | : |
| Plaintiffs, | : |
| v. | : CASE NO. 3:05-CV-73 (RNC) |
| JEFFREY RUBENSTEIN, ET AL., | : |
| Defendants. | : |

RULING AND ORDER

This action under 42 U.S.C. § 1983 against employees of the Waterford Police Department is before the court on motions for summary judgment [Docs. 52, 55]. Briefs submitted by the parties in connection with these motions have served to clarify that the action in its present form presents essentially two federal claims. Plaintiff Bonnie Rubenstein claims that defendant Anthony Munoz, a Waterford police lieutenant, made material omissions in an affidavit in support of an application for an arrest warrant charging her with custodial interference. The warrant issued on the basis of his affidavit and she was eventually acquitted following a jury trial. Plaintiff Elaine Dembroff, Bonnie's mother, claims that defendant John A. Davis, a Waterford detective, after obtaining a search warrant lacking particularity, conducted a general search of her house and seized scores of items outside the scope of the overbroad warrant. State law claims relating to these matters are also presented. For the reasons that follow, summary judgment is granted in favor of the defendants on the

federal claims and the court declines to exercise supplemental jurisdiction over the state law claims.[1]

I. Background

This case stems from a custody dispute between Bonnie and Jeffrey Rubenstein regarding their son Randy. On September 5, 1997, the family court ordered Bonnie to temporarily relinquish custody to Jeffrey. Four days later, Bonnie left the state and took the child with her. On September 12, 1997, the family court awarded sole custody to Jeffrey. He subsequently filed a criminal complaint against Bonnie alleging interference with his custodial rights.[2] In October 1997, the Waterford Police Department obtained

---

[1] The complaint includes federal claims for interference with familial relations but plaintiffs have not briefed these claims, which are therefore deemed abandoned. See Rose v. Panolam Indus. Int'l, Inc., 301 F. Supp. 2d 239, 247 (D. Conn. 2004); see also Design Strategy, Inc. v. Davis, 469 F.3d 284, 300 (2d Cir. 2006).

[2] Connecticut's Custodial Interference statute, Conn. Gen. Stat. §§ 53a-97, 53a-98, provide respectively:
(a) A person is guilty of custodial interference in the first degree when he commits custodial interference in the second degree as provided in section 53a-98: (1) Under circumstances which expose the child or person taken or enticed from lawful custody or the child held after a request by the lawful custodian for his return to a risk that his safety will be endangered or his health materially impaired; or (2) by taking, enticing or detaining the child or person out of this state.
. . .
 (a) A person is guilty of custodial interference in the second degree when: (1) Being a relative of a child who is less than sixteen years old and intending to hold such child permanently or for a protracted period and knowing that he has no legal right to do so, he
(continued...)

2

a warrant for her arrest. The affidavit supporting the warrant application had been prepared by Lieutenant Munoz with guidance provided by the State's Attorney's office.

Bonnie wound up fleeing the country with the child and the two of them lived abroad for five years under assumed names. In July 2002, Bonnie was arrested by F.B.I. agents at her sister's home in Florida pursuant to the long outstanding warrant for her arrest. Detective Davis subsequently obtained and executed a warrant to search the Dembroff home for evidence implicating Elaine in her daughter's flight from Connecticut, including telephone records, credit card statements, videotapes, correspondence, notes, and diaries. Elaine was detained during the search, which resulted in the seizure of a large amount of material, the bulk of it in the form of documents.

On June 27, 2003, Bonnie was acquitted. She subsequently filed a motion for return of the seized property, which was granted by the court on December 1, 2003. Most of the property was turned

---

[2](...continued)
takes or entices such child from his lawful custodian; (2) knowing that he has no legal right to do so, he takes or entices from lawful custody any incompetent person or any person entrusted by authority of law to the custody of another person or institution; or (3) knowing that he has no legal right to do so, he holds, keeps or otherwise refuses to return a child who is less than sixteen years old to such child's lawful custodian after a request by such custodian for the return of such child.

over to Bonnie's lawyer's clerk at the Waterford police department three weeks later. On January 8, 2004, Elaine demanded that the Department return additional items of property. This led to the discovery and return of additional material on February 10, 2004. Elaine contends that certain items still have not been returned.

II. Discussion

  The Affidavit

The Fourth Amendment protects against arrests pursuant to warrants that would not have been issued if the officers seeking them had disclosed information within their knowledge negating probable cause. See Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. 1994); Golino v. City of New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991). To prevail on her claim that Lieutenant Munoz deprived her of this protection, Bonnie must make the showing required at a suppression hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). See Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999); Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). Specifically, she must prove that he knowingly and deliberately, or with reckless disregard for the truth, made material omissions in the affidavit. To determine whether she has a viable claim, the affidavit is corrected by adding omitted information that was known to the officer at the time. See Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992). If the corrected affidavit still establishes probable cause, no Fourth Amendment violation has occurred. See Smith, 175

4

F.3d at 105; Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

On the record before the court, Bonnie cannot prove that Lieutenant Munoz violated her rights under the Fourth Amendment. Her claim is based on his failure to include in the affidavit the following information: (1) that Bonnie had joint custody when she left Connecticut with the child, (2) that she did not have actual knowledge of the subsequent court order awarding Jeffrey sole custody, (3) that when she took the child her intent was not to prevent Jeffrey from ever seeing the child again, and (4) that she fled in order to protect the child from physical and sexual abuse by Jeffrey. These omissions, considered singly or in the aggregate, are insufficient to support a claim.

Lieutenant Munoz prepared his affidavit approximately one month after Bonnie failed to relinquish custody as ordered by the family court, and weeks after her unexplained failure to do so led the court to award sole custody to Jeffrey. During the intervening weeks, police tried to locate Bonnie and the child without success. They did learn, however, that Bonnie had absconded with the child and gone into hiding. In these circumstances, Lieutenant Munoz clearly had probable cause to believe that Bonnie was guilty of custodial interference.

In essence, Bonnie is faulting Lieutenant Munoz for applying for the arrest warrant without first interviewing her to obtain information concerning her state of mind. She fails to explain how

5

he could have interviewed her after she went into hiding with the child.  As a general rule, moreover, an officer who has probable cause for an arrest is not required to refrain from seeking a warrant until he has investigated a possible defense of lack of specific intent.  See Romagnano v. Town of Colchester, 354 F. Supp. 2d 129, 135-36 (D. Conn. 2004) (quoting Baker v. McCollum, 443, U.S. 137, 145-46 (1979)).  Nothing in the record supports an exception to this rule.  There is no evidence Lieutenant Munoz had reason to believe Bonnie was acting without the requisite criminal intent.  In particular, there is no evidence he knew of child abuse by Jeffrey, or even a single allegation of such abuse, at the time he prepared his affidavit.  As mentioned earlier, omitted information is relevant only if it was within the officer's knowledge.  See Caldarola v. Calabrase, 298 F.3d 156, 167-68 (2d Cir. 2002).[3]

The Search

The Fourth Amendment requires that a search warrant describe with "particularl[ity] . . . the place to be searched and the persons or things to be seized."  This requirement protects against "wide-ranging exploratory searches the Framers intended to prohibit."  Maryland v. Garrison, 480 U.S. 79, 84 (1987).  Elaine argues that the warrant authorizing the search of her home was

---

[3] Because Bonnie cannot prove that Lieutenant Munoz violated the Fourth Amendment, there is no need to reach the issue of qualified immunity.

insufficiently particular because it authorized the seizure of financial documents having nothing to do with the investigation. Specifically, she contends that the warrant should have limited the financial documents permitted to be seized to documents generated by certain financial entities after Bonnie fled the state in September 1997.

This claim is unavailing because the warrant, viewed in light of the underlying affidavit, authorized the seizure of financial records connected to Elaine's alleged support of Bonnie while she was a fugitive. See United States v. Bianco, 998 F.2d 1112, 1116-17 (2d Cir. 1993) (any ambiguity in search warrant was cured by particularity of affidavit when affiant was present during search); United States v. Triumph Capital Group, 211 F.R.D. 31, 57 (D. Conn. 2002) ("A common sense and practical reading of the warrant in this case requires the court to construe it as incorporating and referencing all of the attachments and the supporting affidavit, even if the warrant does not expressly do so."). Moreover, limiting the scope of the warrant to financial records of the entities listed in the affidavit would have made little sense, for Elaine could have provided financial support to Bonnie using other entities. See United States v. George, 975 F.2d 72, 75 (2d Cir. 1992) ("we have upheld warrants authorizing the seizure of 'evidence,' 'instrumentalities' or generic classes of items where a more precise description was not possible in the

circumstances, the warrants in those cases identified a specific illegal activity to which the items related"); see also United States v. Shoffner, 826 F.2d 619 (7th Cir. 1987) (upholding a search warrant because "a more particular description could preclude effective investigation of the crimes at issue").

Elaine's challenge to the seizure of items beyond the scope of the warrant is also unavailing. I have reviewed each of the disputed items and find that it was objectively reasonable for Detective Davis to seize the items for substantially the reasons stated in his reply memorandum.

Elaine's claim that some seized items have yet to be returned is not governed by the Fourth Amendment. See Shaul v. Cherry Valley-Springfield Cent. Sch. Dist., 363 F.3d 177, 187 (2d Cir. 2004). Rather, unauthorized deprivations of property by state employees, whether intentional or negligent, are governed by the Due Process Clause of the Fourteenth Amendment. See Hudson v. Palmer, 468 U.S. 517, 533 (1984). Such an unauthorized deprivation of property does not violate due process if a meaningful post-deprivation remedy is available. See id. Elaine has not shown that Connecticut's post-deprivation remedy is inadequate.

III. Conclusion

Accordingly, summary judgment is hereby granted in favor of

the defendants on plaintiffs' federal claims.[4]  Because all the federal claims are being dismissed, the court declines to exercise supplemental jurisdiction over the state law claims, which are dismissed without prejudice.  See 28 U.S.C. § 1367(c)(3); Giordano v. New York, 274 F.3d 740, 754 (2d Cir. 2001).  Detective Davis's motion to supplement his Local Rule 56(a)1 Statement [Doc. #65] is granted.  Defendants' motions to strike [Docs. 64, 67] are denied as moot.  The Clerk may close the file.

So ordered this 31st day of March 2007.

/s/
Robert N. Chatigny
United States District Judge

---

[4] Summary judgment is properly granted in favor of Chief Pendleton and the Town of Waterford because the claims against them are derivative of the claims against defendants Munoz and Davis.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001).